**MARLIN &SALTZMAN, LLP**
Louis M. Marlin, Esq. (SBN 54053)
Kristen Marquis Fritz, Esq. (SBN 268326)
3200 El Camino Real, Suite 100
Irvine, California 92602
(714) 669-4900; Fax (714) 669-4750
louis.marlin@marlinsaltzman.com
kfritz@marlinsaltzman.com

**UNITED EMPLOYEES LAW GROUP, PC**
Walter Haines, Esq. (SBN 71075)
110 Pine Avenue, Suite 725
Long Beach, California   90802
(888) 474-7242; Fax (866) 435-7471
whaines@uelglaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON BEAL, individually and on behalf of other individuals similarly situated,<br><br>                              Plaintiff,<br><br>vs.<br><br>LIFETOUCH, INC., *et al.*,<br>                              Defendants. | Case No.: CV10-8454 JST (MLG)<br><br>**Judge: Josephine Staton Tucker**<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Date: April 9, 2012<br>Time: 10:00 A.M.<br>Place: Courtroom 10A |

Plaintiff Brandon Beal, on behalf of himself and all others similarly situated hereby moves this Honorable Court to enter an Order as follows:

1. Granting Plaintiffs' Motion for Class Certification;

2. Certifying this case as a class action on behalf of the Class and subclass defined as follows:

> All persons who have been, or currently are, employed by Defendants in California during the Class Period who were classified by Defendants as non-exempt (whether paid hourly or on salary) and who held, or hold, the position of photographer

1

or any other title having job duties involving the carrying of photographic equipment, the staging, posing or taking of photographs, on-site completion of paperwork or order forms, and/or the performance of any other on-site work related to photographic activities.   Excluded from the Class are employees who regularly work at a permanent and fixed studio location.

Subclass 1:

All Class members whose employment with Defendants terminated, including those terminated as a result of seasonal lay-off.

The Class Period is defined as the period from November 5, 2006 through the date that judgment is entered.

3.  Appointing Brandon Beal as representative of the Class and Subclass;

4.  Appointing Marlin & Saltzman, LLP and United Employees Law Group PC as Counsel for the Class and Subclass; and

5.  Authorizing Plaintiff to send Notice to all absent Class members.

The Motion is based on the accompanying Memorandum of Points and Authorities, the declarations and exhibits filed herewith, all matters of which the Court may take judicial notice, and such other and further oral and/or documentary evidence as may be presented at the hearing on this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 31, 2011.

DATED:  February 10, 2012          **MARLIN & SALTZMAN, LLP**
**UNITED EMPLOYEES LAW GROUP PC**

By:   /s/  Kristen Marquis Fritz
LOUIS M. MARLIN
KRISTEN MARQUIS FRITZ
Attorneys for Plaintiff BRANDON BEAL

2

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii-iv

LIST OF EXHIBITS .......................................................................................... v

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.      INTRODUCTION ................................................................................ 1

II.     FACTS AND EVIDENCE IN SUPPORT OF CLASS TREATMENT ............. 2

III.    VARIANCES IN TERRITORY PRACTICES ARE IRRELEVANT ................. 9

IV.     CLASS CERTIFICATION IS PROPER ............................................... 10

        A.      Ascertainability ....................................................... 11

        B.      Numerosity ................................................................ 12

        C.      Commonality ............................................................. 12

                1.      Claim for failure to indemnify/reimburse ...................................... 13

                2.      Claims for failure to pay drive time wages, failure
                        for all hours worked, and failure to pay overtime wages .............. 14

                3.      Claim for missed meal and rest breaks ........................................ 16

                4.      Claim for failure to furnish accurate wage statements .................. 17

                5.      Claim for failure to pay compensation upon discharge ................. 18

                6.      Claim for violations of B&P Code §§ 1720, et seq ...................... 18

        D.      Typicality ................................................................... 19

        E.      Adequacy of Representation ..................................... 20

        F.      The Predominance Requirement of FRCP 23(b)(3) Is Met ..................... 21

V.      NATURE AND METHOD OF CLASS NOTICE ............................. 10

VI.     CONCLUSION .................................................................................. 25

i

# <u>TABLE OF AUTHORITIES</u>

**Pages(s)**

<u>**Federal Cases**</u>

*Anderson vs. Mt. St. Clements Pottery Co.*
328 U.S. 680 (1946) ................................................................................ 14, 17

*Armstrong v. Davis*
275 F.3d 849 (9th Cir. 2001) ............................................................................ 12

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*
270 F.R.D. 488 (N.D.Cal., 2010) ...................................................................... 12

*Blackie v. Barrack*
524 F.2d 891 (9th Cir. 1975) ...................................................................... 20, 23

*Cicero v. DIRECTV, Inc.*
2010 WL 2991486 (C.D. Cal. July 27, 2010) .................................................. 23

*Clesceri v. Beach City Investigations & Protective Services, Inc.*
2011 WL 320998 (C.D.Cal., Jan. 27, 2011) .................................................... 25

*Consolidated Rail Corp. v. Town of Hyde Park*
47 F.3d 473 (2nd Circ. 19945)2011 WL 320998 (C.D.Cal., Jan. 27, 2011) ...... 12

*Glenn v. Culkin*
197 F. 2d 981 (8th Cir, 1952),
*cert denied,* 344 U.S. 866 (1952), *reh'g den*, 344 U.S. 888 (1952) .................. 15

*Gomez v. Rossi Concrete, Inc.*
270 F.R.D. 579 (S.D. Cal. 2010) ...................................................................... 23

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ..................................................... 12, 19, 20, 22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
2006 WL 1530166 (N.D.Cal. Jun. 5, 2006) ...................................................... 22

*In re Live Concert Antitrust Litigation*
247 F.R.D. 98 (C.D.Cal., 2007) .................................................................. 14, 23

*In re Lorazepam & Clorazepate Antitrust Litig.*
202 F.R.D. 12 (D.D.C.2001) ............................................................................ 22

# **TABLE OF AUTHORITIES**

## [Continued]

**Pages(s)**

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
244 F.3d 1152 (9th Cir.2001) ............................................................................ 21

*Lopez v. G.A.T. Airline Ground Support, Inc.,*
2010 WL 3633177 ............................................................................................ 20

*Mullane v. Central Hanover Bank & Trust Co.*
339 U.S. 306 (1950) ......................................................................................... 25

*O'Connor v. Boeing North American, Inc.*
184 F.R.D. 311 (C.D. Cal. 1998) ..................................................................... 11

*Romero v. Producers Dairy Foods, Inc.*
235 F.R.D. 474 (E.D.Cal.2006) ....................................................................... 22

*Schwartz v. Harp*
108 F.R.D. 279 (C.D. Cal. 1985) ..................................................................... 20

*Sullivan v. Kelly Services, Inc.*
268 F.R.D. 356 (N.D.Cal., 2010) ..................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. __, 131 S.Ct. 2541 (2011) ........................................................... 13, 20

**State Cases**

*Bono Enterprises, Inc. v. Bradshaw*
32 Cal. App. 4th 968 (1995) ............................................................................. 15

*In re: Sav-on Drug Stores, Inc.*
34 Cal.4th 319 (2004) ...................................................................................... 14

*Smith vs. Superior Court (L'Oreal)*
39 Cal.4th 77 (2006) ........................................................................................ 18

**Statutes**

B&P Code § 17200 ........................................................................................... 19

Code of Civil Procedure § 382 ............................................................................ 2

Labor Code §§ 201 - 202 ................................................................................... 18

Labor Code §203 ............................................................................................... 18

Labor Code § 226 ....................................................................................... 16, 17

Labor Code § 510 ............................................................................................... 15

Labor Code § 512(a) .......................................................................................... 17

Labor Code § 1174 ............................................................................................. 16

Labor Code § 1194 ............................................................................................. 15

Labor Code § 2802(a) ........................................................................................ 13

**Rules**

Fed.R.Civ.P. 23 .............................................................. 10, 11, 12, 19, 20, 25

**Regulations**

8 CCR § 11010(2)(G)......................................................................................... 15

**Other Authorities**

Manual for Complex Litigation, Fourth §21.222 at 270 (2005) ........................ 11

Nagareda, *Class Certification in the Age of Aggregate Proof*
    84 N.Y.U.L.Rev. 97, 132 (2009) ............................................................... 13

Wage Order 4-2001 ..................................................................................... 16, 17

MEMO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION          CV10-8454 JST

# **LIST OF EXHIBITS**

Exhibit 1: LNSS California Field Employee Handbook Revised December 2009

Exhibit 2: LCD Field Employee Handbook Revised March 2010

Exhibit 3: LNSS and LCD Class Member Censuses

Exhibit 4: Chart of Lifetouch National School Studios, Inc. and Lifetouch Church Directories and Portraits, Inc. Vehicle Reimbursement Practices In California

Exhibit 5: LNSS Automobile Expense Reimbursement Policy dated July 2011

Exhibit 6: LNSS Employee Commute Time and Mileage Information Form, July 2011

Exhibit 7: LNSS California Field Employee Handbook Revised January 2011

Exhibit 8: LNSS Personal Cellular Telephone Policy, July 2011

Exhibit 9: LNSS Drive Time Policy and Employee Commute Time and Mileage Information Form dated July 2011

Exhibit 10: LCD Photography Team Reimbursement: California Territories

Exhibit 11: LCD Position Description: Photography Sales Specialist

Exhibit 12: LCD Field Employee Handbook dated February, 2008

Exhibit 13:  LNSS California Daily Time Sheet

Exhibit 14: LNSS California Weekly Time Sheet

Exhibit 15: LCD Exemplar Electronic Time Sheet

Exhibit 16: Exemplar of Plaintiff's wage statement

Exhibit 17: LCD Exemplar Offer Letter for Photography Sales Specialist

Exhibit 18: LCD Exemplar Offer Letter for Photography Sales Specialist, Revised July 2011

MEMO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION          CV10-8454 JST

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff, on behalf of himself and a proposed Class, alleges systematic violations of the California Labor Code ("Labor Code") and the California Business & Professions Code ("B&P Code") by Lifetouch, Inc., Lifetouch National School Studios, Inc. ("LNSS"), and Lifetouch Church Directories and Portraits, Inc. ("LCD"), hereinafter jointly "Defendants."  Specifically, Defendants have administered a corporate-wide practice concerning mileage reimbursement rates, the pre-calculating of travel distances, and the circumstances under which an employee is eligible for reimbursement for mileage, which results in employees uniformly not being indemnified for all such expenses, in violation of California law.  Defendants have also administered a corporate-wide practice concerning the payment of drive time wages and the circumstances under which an employee is eligible to receive drive time wages, which also results in employees not being paid for all time that they spend driving in the course of their employment, once again in violation of California law.  In addition, Defendants do not pay overtime wages for all overtime hours worked.  Further, Defendants have failed to furnish employees with accurate, itemized wage statements that disclose all hours worked and proper rates of pay.  Finally, upon termination, Defendants do not pay all owed wages in a timely manner.  Defendants' conduct also constitutes unfair acts under the B&P Code.

Class treatment is warranted because Plaintiff's theories of liability are common to all Class members.[1]  In addition, Plaintiff's claims can be proven in a manageable

---

[1]    Plaintiff seeks to recover for Defendants' failure to indemnify for employment-related expenses incurred in violation of Labor Code §§ 226 and 2802; failure to pay wages as earned and due, failure to pay proper amounts for overtime compensation in violation of Labor Code §1194 and the order and standards promulgated by the DLSE and the Industrial Welfare Commission;  having discouraged or deprived employees of meal and rest breaks, and failure to pay for missed breaks pursuant to Labor Code §§ 200, 226.7, 512, and 12 CCR § 11040; failure to pay compensation at time of

trial using proof common to the members of the proposed Class.  Indeed, common evidence will establish that Defendants' policies and procedures resulted in Defendants' failure to comply with the law as regards all Class members.  Common legal issues and common factual questions predominate over any possible individual issues.  Therefore, because all requirements of Federal Rule of Civil Procedure, "FRCP," 23 are met, this matter should be certified as a class action.

## II.   FACTS AND EVIDENCE IN SUPPORT OF CLASS TREATMENT[2]

As a result of this Court's order that class and merits discovery should occur simultaneously, a significant amount of discovery has been completed to date, providing Plaintiff with extensive and in-depth knowledge of Defendants' policies and practices.  In addition to written discovery responses and documents that have been produced, Plaintiff's counsel deposed the corporate representatives of Lifetouch, Inc., LNSS and LCD, as well as the individual responsible for LNSS's payroll.  In addition, Plaintiff's counsel took the depositions of the managers for each and every territory of LNSS and LCD in California who testified in detail regarding Defendants' practices throughout California.  This comprehensive evidence will establish both the propriety of class certification in this case, as well as Defendants' ultimate liability.[3]

_____

termination in violation of Labor Code §§ 201-203; and failure to furnish accurate, itemized wage statements required by Labor Code § 226.

[2]   Plaintiff cites to supporting evidence herein, not for the purpose of determining the merits, but, rather, to demonstrate (1) that there are legal and factual issues common to all proposed class members and (2) that these issues are provable, through common evidence, on a classwide basis.  With regard to each of Plaintiff's claims, there are predominant *common issues*, involving *common business practices or policies*, provable through classwide *common evidence* that raise *common legal issues,* that, once proven, establish liability through a classwide *common adjudication*.

Due to the volume of deponents, cited excerpts from the various depositions will be provided to the court in a Compendium of Testimony, filed herewith.  Throughout this memorandum, all deposition testimony will be referred to by the last name of the deponent, followed by the page(s) and line(s) of the referenced testimony.

[3]   Because the claims in this matter are based upon the actions (or inaction) of Defendants, Defendants' own documents and testimony are offered to establish the

2

LNSS and LCD have employed thousands of class members in California since November, 2006.[4]  Labor relations for both of these related Defendants are centrally controlled in Minneapolis, Minnesota ("corporate headquarters"), and accounts payable, accounts receivable, employee benefits, human resources, payroll and reimbursements of employee expenses for all LNSS and LCD employees are administered by Lifetouch Inc. at corporate headquarters.  Kramer II, 51:20-52:23.[5]  From corporate headquarters, LNSS and LCD issue Field Employee Handbooks, ("Handbooks"), containing corporate policies applicable to all Class members.  *See, e.g.,* LNSS California Field Employee Handbook Revised December 2009 (at p. 1) and LCD Field Employee Handbook Revised March 2010 (at p. 4), attached hereto as Exhibits 1 and 2, respectively; *see also,* Stoltenberg, 33:22-34:19 (handbooks are the primary vehicle by which LNSS provides policies for its employees); Wood, 177:17-178:2, 168:5-12 (employment-related "policies are determined for the company by myself, and in conjunction with our legal department").

**Failure To Reimburse For Use of Personal Vehicle:**

A review of these Handbooks reveals that neither LNSS nor LCD has a policy for reimbursing Class members for *all* expenses incurred in the course of their employment.  Rather, both employers simply set forth the general proposition that "[e]mployees **may** be eligible" for reimbursement.  *See,* Exhibits 1 and 2 at p. 28, respectively.  Although the circumstances for eligibility for reimbursement, and rates

---

propriety of certification.  Therefore, it was not necessary to provide the Court with multiple declarations of putative class members simply to confirm the testimony of Defendants' own witnesses and documents regarding Defendants' practices.  Indeed, here, such declarations would merely be duplicative of the evidence directly from Defendants.

[4]  Although they do not reflect the most current information, the censuses produced by Defendants in this ligation establish that there are more than 3,900 Class members.  *See,* LNSS and LCD Class Member Censuses, attached hereto as Exhibit 3.

[5]  Further, as set forth in Plaintiff's Third Amended Complaint at ¶¶19-29, Defendants are members of an integrated enterprise.

3

of reimbursement, are set by local managers, neither LNSS nor LCD fully indemnifies class members for the use of their personal vehicles for business purposes under any of the rates established. *See,* Exhibit 4 hereto, which is a chart setting forth the rates and circumstances under which Defendants reimburse Class members for use of their personal vehicles.  Plaintiff will establish at trial that none of these results in proper reimbursement under the Labor Code. Indeed, as a result of Defendants' practices, Class members are never fully reimbursed for business use of their personal vehicles, whether it be (1) because they are not reimbursed for use of their personal vehicle at all, (2) because they are reimbursed at woefully inadequate rates, (3) because they are reimbursed only in certain circumstances (i.e., when they are carrying equipment), or (4) because they are reimbursed only for pre-calculated mileage distances which do not reflect actual mileage driven. *See, id.*

For the first time, in July of 2011 (and presumably in response to the filing of this action), LNSS issued an "Automobile Expense Reimbursement Policy" that specified the circumstances, and rate, under which employees would be paid for business use of their personal vehicle. *See,* Exhibit 5 hereto.[6]  Specifically, the policy provides that employees are to be reimbursed $.555/mi for all miles driven minus "commute" miles.[7]   However, this new policy still does not result in full reimbursement to Class members under the Labor Code.

**Failure To Reimburse For Business Use Of Personal Cell Phones:**

LNSS and LCD do not indemnify class members for the business use of their personal cell phones.  In fact, prior to July, 2011, LNSS's stated policy was that it was not responsible for charges or minutes used on personal cell phones for the employer's benefit.  *See,* LNSS California Field Employee Handbook Revised January 2011 (at p.

---

[6]    LCD has not made any recent changes to its reimbursement practices.

[7]    "Commute" miles are determined by agreement between LNSS employees and Lifetouch. *See,* LNSS Employee Commute Time and Mileage Information Form, July 2011, attached hereto as Exhibit 6.

24), attached hereto as Exhibit 7.  In July, 2011, however, LNSS instituted a policy whereby employees are permitted to submit a request for reimbursement of actual expenses for business use of their personal cell phones.  *See,* LNSS Personal Cellular Telephone Policy, July 2011, attached hereto as Exhibit 8.   LCD does not have *any* policy for reimbursing class members who use their personal cell phones for Lifetouch business.  *See, e.g.,* Exhibit 2; *see also, e.g.,* Edwards-Pink, 28:4-12.

As result of Defendants' practices with respect to reimbursements for use of personal vehicles and cellular phones, Class members are not fully reimbursed for all business expenses incurred in direct consequence of the discharge of their duties,  thus resulting in clear violations of Labor Code §§ 226 and 2802.

**<u>Failure To Compensate For All Hours Worked</u>:**

Class members are also not compensated for all hours that they work.  The depositions taken, and the evidence gathered to date, establishes that despite having a stated policy in their Handbooks that drive time is considered hours worked and must be accurately recorded on time records, *see, e.g.,* Exhibits 1 and 2, prior to July 2011, neither LNSS nor LCD defined drive time or ensured that it was paid.

Prior to July, 2011, drive time - and the circumstances under which an LNSS employee was eligible for drive time pay - was established by local managers. Indeed, the testimony clearly establishes that the LNSS managers in California restrict payment so that Class members are paid for drive time in only limited circumstances (i.e., only when they are carrying equipment, and/or driving, and/or for pre-calculated amounts). *E.g.,* Anderson, 40:9-12 (employees need to be carrying equipment in their vehicles to be paid for drive time); Burkett, 59:16-18 (prior to 2011, employees had to be carrying equipment in their vehicles to be paid for drive time); Villano, 99:2-16 (employees were only paid for drive time when they were carrying equipment in their vehicles or when they were driving between schools without equipment), 58:4-12 (prior to July 2011, with some exceptions, passengers were not paid for drive time); Gibb, 57:9-16, 70:9-12 (drive time is paid only when employee is carrying equipment

in their vehicle); Page, 76:12-17 (same); Schmel, 42:6-19 (same), 56:11-57:21 (drive times are pre-calculated), 78:23-79:9 (passengers are paid for drive time only when traveling to certain cities-long distance from the office).  These practices have resulted in Defendants failure to properly pay Class members for all driving time, in violation of California law.  Beginning in July, 2011, LNSS instituted a "Drive Time Policy" that defined drive time and specified the circumstances, and rate, under which it would be paid.  *See,* LNSS Drive Time Policy and Employee Commute Time and Mileage Information Form dated July 2011, attached hereto as Exhibit 9.  LCD continues its unlawful practice of not paying for drive time.  *See, e.g.,* Phipps, 30:7-25; Wall, 25:1-7; Landua, 55:9-20 (drive time is not considered hours worked).[8]

### **Failure To Pay All Earned Overtime Compensation:**

Tied directly to Defendants' failure to pay for all drive time spent on company business is Defendants' failure to pay proposed Class Members overtime compensation.  Although Defendants have a legal obligation to pay overtime to non-exempt employees, neither LNSS nor LCD has a policy or practice that results in Class members being paid for all overtime hours that they work.  LNSS pays overtime only for recorded hours worked, and not for unrecognized drive time, on-duty, working meal periods, and other off-the clock time, as set forth above. In addition, LCD does not pay overtime wages at all to photography employees.[9]  Thus, despite Defendants' stated policy to pay overtime compensation, the direct consequence of Defendants'

---

[8]    However, some LCD managers testified that they pay a drive-time allowance for long-distance travel only.  *See, e.g.,* Moore, 35:14-36:9; 49:1-3. Others do not provide any such allowance.  *See, e.g.,* LCD Photography Team Reimbursement: California Territories, attached hereto as Exhibit 10.

[9]    During his deposition, LCD's Senior Director of Human Resources claimed that its employees are exempt from the overtime requirement.  *See,* Wood, 169:6-23. However, the written documentation in this case indicates that these are non-exempt employees and that LCD considers them such.  *See, e.g.,* LCD Position Description: Photography Sales Specialist, attached hereto as Exhibit 11.

MEMO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION          CV10-8454 JST

1  practices with respect to drive time is that the Plaintiff and Class members have not

2  been compensated for all overtime hours they work at the appropriate rates.

3  **Failure To Provide Meal and Rest Breaks:**

4  Class members are also not provided with proper meal and rest breaks. Despite

5  LNSS's and LCD's stated policy that non-exempt employees are required to take meal

6  and rest periods as required by state law, *see e.g.*, LCD Field Employee Handbook

7  dated February, 2008, attached hereto as Exhibit 12; LNSS California Field Employee

8  Handbook dated December 2009, attached hereto as Exhibit 1, neither employer has a

9  policy or practice that would enable those breaks to be taken at all times.  Rather, the

10  nature of Defendants' business is such that Class members often cannot take the meal

11  and rest breaks to which they are entitled.  By way of example, with two employees

12  working the cameras, LCD customers are scheduled for sittings every 10 minutes, with

13  the average sitting taking 30 minutes, such that it is impossible to complete all

14  scheduled customers in the times allotted, necessitating the use of "reserve" times for

15  work.  Wood, 162:7-164:20.

16  Further, most LNSS managers testified that school schedules prevented

17  employees from taking meal and/or rest periods.  *See, e.g.,* Capistrant, 29:14-19;

18  Panzer 38:8-18; Schmel, 90:7-10, 99:4-7; Burke 22:18-23:7; Russo, 29:16-19; Villano,

19  35:7-16; Dunn, 36:24-37:11; Suhi, 67:21-68:18; Page, 57:2-6; Clark, 45:7-16; Sanders,

20  70:16-71:8;  Terretola,  44:7-19;  Frankhouser,  55:18-25;  Burkett,  44:2-7.   As  such,

21  classwide, meal and rest periods are either not taken, are taken late, or employees are

22  forced to work during what should be their meal and rest periods.  Furthering their

23  violations of the Labor Code, Defendants do not have a practice for Class members to

24  record  all  missed  meal  breaks  and,  therefore,  do  not  pay  them  for  all  wages,  or

25  appropriate premiums, for missed breaks as required by section 226.7.[10]

26  _____

27  [10]    For example, Class members do not record when they take, or cannot take, rest

28  breaks.  *See, e.g.,* Schmel, 101:17-19; Panzer, 56:1-5; Russo, 58:11-15; Burke, 28:8-
10;  Villano,  54:4-8;  Capistrant,  39:23-24;  Dunn,  35:25-36:3;  Suhi,  74:10-13;  Page

MEMO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION        CV10-8454 JST

**Inaccurate Wage Statements**:

Class members' wage statements are uniformly inaccurate. Labor Code § 226 mandates the vital information that must be included in employee's wage statements for the very purpose of permitting wage earners a straight forward method of determining if they have received all wages to which they are entitled at each pay period. Payroll for both LNSS and LCD employees is administered by Lifetouch, Inc. at corporate headquarters. *See,* Kramer II, 52:14-23. The wage statements issued to employees of LNSS and LCD are woefully inadequate and fail to meet the minimum standards imposed by the Labor Code

Defendants' wage statements do not accurately report all drive time hours and the regular or overtime wages resulting therefrom. In addition, Defendants do not fully and accurately disclose to employees the method they use for calculating employee's regular rate of pay for purposes of overtime and double-time, and the method (and whether it is accurate) is not discernible from the wage statements themselves. *See, e.g.,* Exhibit 16 filed herewith, an example of one of Plaintiff's wage statements. As a result, Plaintiff and Class members are not able to ascertain from their wage statements whether the proper rates of pay are used by Defendants in that calculation and whether they have been paid all wages owed, in violation of Labor Code § 226.

**Failure To Pay All Earned Wages At Termination**:

Finally, Class members are not paid for all wages due upon termination. Labor Code §§ 201-202 set forth specific time limits for payment of final compensation upon termination of employment. LNSS and LCD both discharge or "layoff" employees at various times throughout the year (because of the seasonal nature of Defendants'

---

38:22-39:1; Sanders, 58:14-17; Frankhouser, 66:23-25; Gibb, 50:1-3, 100:22-24; Monroe, 40:22-23; *see also,* LNSS daily and weekly timesheets, attached hereto as Exhibits 13 and 14 respectively, which do not have a place to record rest breaks or when they are not taken; *see also,* exemplar LCD timesheet (which does not have a place to record rest breaks or when they are not taken), attached hereto as Exhibit 15; *see also* Wood, 176:22-177:7.

8

business).  *See, e.g.,* Wood, 178:7-13; Russo, 119:6-17; Panzer, 138:22-140:4; Schmel, 115:3-116:7;  Burke  164:11-17;  Villano,  131:10-16;  Capistrant,  114:11-15;  Suhi, 117:7-10;  Gibb,  111:11-19;  Burkett,  111:3-13;  Anderson,  62:23-63:4;   O'Connor, 25:19-21; Patel, 90:3-9.   These employees cease earning wages from Defendants unless and until they are re-hired at a later date.   Here, individual employees may be discharged more than once in a calendar year, without a guarantee of being rehired. *See, e.g.,* Wood, 178:25-179:8; Schmel, 115:3-116:7; Panzer, 142:11-14; Burke, 164:18-165:3;  Villano,  132:2-10;  Capistrant,  115:2-9;      Burkett,  112:21-113:9; Anderson, 63:5-13; Patel, 90:11-20.  Each time that Plaintiff and Subclass members were discharged during the Class Period, either voluntarily or involuntarily, certain wages remained due and owing to them (including unpaid minimum wages, drive time wages and overtime wages).  Whether Defendants paid all earned wages at termination raises the common issue of Class members' entitlement to up to 30 days of additional wages after *each* discharge, under Labor Code § 203.[11]

## III.   VARIANCES IN TERRITORY PRACTICES ARE IRRELEVANT

Plaintiff expects that Defendants' opposition to this Motion will attempt to make much of the fact that Class members worked in numerous different territories throughout California and that the specific circumstances regarding reimbursements, drive time pay, and schedules, were dictated by managers in each territory.  However, Class members are/were employees of LNSS and/or LCD, and not of an individual territory, and the issues in this case involve ***the employers'*** practices, which violate California law.  Regardless of the offices or territories worked in, Class members were all  improperly  subjected  to  non-complying  practices,  as  is  demonstrated  by  the examples of those practices provided herein.

---

[11]      "If an employer willfully fails to pay…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid … but the wages shall not continue for more than 30 days."  Labor Code §203.

9

An analogy is helpful to demonstrate the simplicity of this argument: California employers are required to pay employees at least minimum wage (currently $8.00/hr). If an employer had a practice that allowed individual managers to set the rate of pay whereby manager A set the rate at $7.55/hr, manager B set the rate at $6.95/hr, and manager C set the rate at $7.99/hr then, regardless of the rate set by the manager, all of the employees would be underpaid (the only differences being by how much).  The same is true in this case.   Whether underpaid by a mileage reimbursement rate improperly set at 35 cents per mile, or 22 cents per mile, what can be established on a classwide basis is the common fact of under payment of business expense reimbursements.  The specifics merely go to damages issues, as discussed below.  The same is true as regards all of Plaintiff's claims.  Indeed, as set forth herein, regardless of the territory worked in, all class members were uniformly subjected to underpayments for expenses, wages, and penalties.

## IV.   CLASS CERTIFICATION IS PROPER

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FRCP 23(a).  A class action seeking primarily monetary recovery may be maintained "if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FRCP 23(b)(3).

Here, the Court is being asked to certify the following Class and Subclass:

> All persons who have been, or currently are, employed by Defendants in California during the Class Period who were classified by Defendants as non-exempt (whether paid hourly or on salary) and who held, or hold, the position of

10

photographer or any other title having job duties involving the carrying of photographic equipment, the staging, posing or taking of photographs, on-site completion of paperwork or order forms, and/or the performance of any other on-site work related to photographic activities.  Excluded from the Class are employees who regularly work at a permanent and fixed studio location.

Sub-Class 1:
All Class members whose employment with Defendants terminated, including those terminated as a result of seasonal lay-off.

As is discussed more fully below, all of the requirements of FRCP 23(a) and 23(b) have been met and, as such, the above Class and Subclass should be certified.

### A. Ascertainability

The certified class definition must be "precise, objective and presently ascertainable."  Manual for Complex Litigation, Fourth §21.222 at 270 (2005).  The class definitions must be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member.  *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  Here, the class definitions are precise and objective and the members of the Class and Subclass are ascertainable and identifiable from Defendants' own records.  Indeed, the discovery produced by Defendants to date establishes that Defendants' records do, in fact, contain all of the data necessary to ascertain an individual's membership in the Class and Subclass.[12]  As such, it is administratively feasible for the Court to determine whether a particular individual is a member of the Class and the Subclass.

---

[12]   Defendants have produced the names and contact information for their non-exempt current and former employees in California who held, or hold, the position of photographer or any other title having job duties involving the carrying of equipment, the staging, posing or taking of photographs, on-site completion of paperwork or order forms, and/or the performance of any other on-site work related to photographic activities.  Declaration of Kristen Marquis Fritz, "Fritz Decl.," at ¶4, filed herewith.  In addition, Defendants' records contain the termination dates of each Class member, demonstrating their membership in the Subclass.  *Id.* at ¶5.

11

1

## B. Numerosity

2    FRCP 23(a)(1) requires that the proposed class must be so numerous that joinder

3  of all members is "impracticable."  There is no set numerical cutoff, but some courts

4  have held that numerosity may be presumed at a level of forty members.  *See, e.g.,*

5  *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

6  Discovery in this matter has revealed that there are more than 4,000 members of the

7  Class.  *See,* Fritz Decl. at ¶6.  As such, the Class is sufficiently numerous.

8

## C. Commonality

9    FRCP 23(a)(2) requires that Plaintiff establish that there are "questions of law or

10 fact common to the class," but it has been construed permissively and all questions of

11 fact and law need not be common to satisfy the rule.[13]  Rather, "[t]he existence of

12 shared legal issues with divergent factual predicates is sufficient, as is a common core

13 of salient facts coupled with disparate legal remedies within the class."  *Hanlon v.*

14 *Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).  Indeed, "[t]he commonality test

15 is 'qualitative rather than quantitative'—one significant issue common to the class may

16 be sufficient to warrant certification." *Barnes v. AT & T Pension Benefit Plan-*

17 *Nonbargained Program,* 270 F.R.D. 488, 493 (N.D.Cal.,2010).  Further, in the Ninth

18 Circuit, the requirements of Rule 23(a)(2) are to be construed "permissively." *Id.*,

19 citing *Hanlon*, 150 F.3d at 1019.

20    The Ninth Circuit has held that "'commonality is satisfied where the lawsuit

21 challenges a system-wide practice or policy that affects all of the putative class

22 members,' because such a system implicates common factual questions." *Armstrong v.*

23 *Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  Importantly, a finding of commonality is not

24 undermined by differences in the ways in which system-wide practices affect

25 individual members of the class (e.g., whether Defendants' practices here result in

26 Class members being under-reimbursed by \$.25 per mile or \$.35 per mile does not

27

28 [13]    The fact that common questions predominate, in order to meet the requirement of, will be discussed *ante*.

impact the common element of underpayment).  *Id.*  What also is relevant for purposes of class certification is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S.Ct. 2541, 2551 (2011) (emphasis in original), *citing* Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009).[14] Here, Plaintiff and Class members share numerous common factual and legal questions and, as discussed below, these are readily susceptible to common, classwide proof, thus providing the critical (and dispositive) answers necessary to resolve this litigation.

### 1.    Claim for failure to indemnify/reimburse

The first common question amenable to treatment on a classwide basis is whether Defendants' reimbursement practices result in employees *not* being indemnified for all business related expenditures, including use of personal vehicles and personal cell phones.  California law requires that "[a]n employer shall indemnify his or her employee for ***all*** necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…." Labor Code § 2802(a) (emphasis added).  Here, Defendants do not fully reimburse and indemnify class members for expenses they incur.  Instead, their practices are uniformly non-compliant with California law.

Because Plaintiff will establish that all Class members were governed by an endemic and systematic failure to properly reimburse them for all such expenses, Plaintiff has posed questions of law and fact that are common to the class.  The existence of these violations, and the absence of policies and procedures that comply with the law, can be proven on a classwide basis.  The use of common proof will

---

[14]    This case differs from *Wal-Mart v. Dukes, supra,* as there is no overarching corporate policy that complies with the law. In addition, unlike *Dukes,* Plaintiff will establish that, although some reimbursement related discretion is afforded to territory managers, the company-wide fact is that the practices set by the managers do not comply with the law, resulting in what did not exist in *Dukes* - a company-wide failure to comply with the Labor Code.

1   generate common answers, making the issue of whether Defendants' reimbursement
2   practices result in employees *not* being indemnified for all business related
3   expenditures particularly suitable for class treatment.

4        This analysis is not impacted by the fact that local managers are authorized by
5   Defendants to set different rates for certain reimbursements,[15] because the
6   reimbursements as to all Class members fail to comply with California law.  Indeed,
7   the differing rates do not vitiate the common and systemic Labor Code violations as
8   Defendants have, on a classwide basis, failed to implement a compliant policy or
9   practice.   Also, while different employees will have suffered losses in different
10  amounts, they have all suffered violations of the same law.   The *amount* of
11  uncompensated expenses goes only to the amount of damages suffered, and thus will
12  not impact liability.  The need to prove individualized damages (where the amounts
13  owed may vary by territory), does not serve as an impediment to class certification.
14  *See*, *In re: Sav-on Drug Stores, Inc.,* 34 Cal.4th 319, 334 (2004); *In re Live Concert*
15  *Antitrust Litigation*, 247 F.R.D. 98, 147 (C.D.Cal., 2007); *Anderson vs. Mt. St.*
16  *Clements Pottery Co.,* 328 U.S. 680, 686 (1946).  The important and relevant issue is
17  whether Defendants' companywide policies and practices result in Class members not
18  being fully indemnified, and the answer will apply equally to all Class members.

19                    **2.    Claims for failure to pay drive time wages, failure to pay**
20                        **for all hours worked, and failure to pay overtime wages**
21       Whether or not members of the proposed class have been paid for all hours they
22  perform work is an issue appropriate for class action treatment.   Specifically, the

---

24  [15]    Stoltenberg, 68:5-13 (noting that the only guidelines provided by LNSS to
25  territories in California regarding the reimbursement of expenses to employees is the
    single statement in the California Field Employee Handbook that '[e]mployees *may* be
26  eligible' for reimbursement).  *See also,* LCD Exemplar Offer Letters for Photography
27  Sales Specialist, undated and revised July 2011, attached hereto as Exhibits 17 and 18,
    respectively (stating that employees "are eligible for expense reimbursement per the
28  guidelines established within your territory").

14

following common questions can be resolved on a classwide basis: whether Plaintiff and Class members were entitled to drive time pay for all time spent driving in the course of their employment and for the benefit of Defendants;[16]  whether Defendants had/have a practice of not paying for all drive time and for all hours worked; and whether Defendants' practice of failing to pay for all hours worked violates applicable provisions of California Law.[17] These questions lead directly to the issue of whether Defendants unlawfully failed to properly calculate and pay overtime compensation due and owing to the Plaintiff and Class members.[18]

In this case, the evidence will establish that all of the actual time spent by Plaintiff and Class members driving to and from job sites is for the benefit, and at the direction of, Defendants.  The legal issue of whether the time claimed is compensable is entirely subject to common proof, and will result in a common determination,

---

[16]     "Hours worked" means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  8 CCR § 11010(2)(G).  With certain limited exceptions not applicable here, hourly employees in California are entitled to be paid for all the time they are "subject to the control of an employer."  *Bono Enterprises, Inc. v. Bradshaw,* 32 Cal. App. 4th 968, 973 (1995).

[17]     An employer may not "arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him."  *See, Glenn v. Culkin,* 197 F. 2d 981, 987 (8th Cir, 1952), *cert denied,* 344 U.S. 866 (1952), *reh'g den,* 344 U.S. 888 (1952) (holding that working time amounting to $1 of additional compensation a week is not a trivial matter to a workingman, and was not *de minimis*).

[18]     Labor Code § 510(a) provides that "[e]ight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek … shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."  Labor Code § 1194(a) provides:  "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than … the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this … overtime compensation…."

15

1   making the issue particularly suitable for class treatment.[19]   The same is true regarding

2   Defendants' calculation methods, which either are, or are not, compliant with

3   California law on a classwide basis.   The circumstances of individual employees'

4   underpayment and the *amount* of uncompensated time (and resultant overtime) go to

5   damages, and thus are not relevant at this stage of the litigation.

6                    **3.      Claim for missed meal and rest breaks**

7          Another common question is whether Defendants had/have a practice that

8   deprives Plaintiff and Class members of their ability to take meal and/or rest breaks.

9   California law provides that "[n]o employer shall require any employee to work during

10  any meal or rest period mandated by an applicable order of the Industrial Welfare

11  Commission."   Labor Code § 226.7(a); Wage Order 4-2001 § 11(A), 12(A).   If the

12  required meal or rest period is not provided, the employer "shall pay the employee one

13  additional hour of pay at the employee's regular rate of compensation for each work

14  day that the meal or rest period is not provided."   Labor Code § 226.7(b).   Plaintiff and

15  Class members here are entitled to at least one 30-minute meal period and two 10

16  minute rest periods per 8 hour shift, during which they should have been relieved of all

17  duties. *See,* Labor Code §§ 226.7, 512(a) and Wage Order 4-2001.[20]

18         In this case, common evidence will establish that LNSS and LCD do not have

19  any policy to ensure that meal and rest periods are provided to Class members, and that

20  their business model and practices result in class members being denied these benefits

---

[19]      Pursuant to Labor Code §§ 1174(d), 1174.5, the employer is required to maintain accurate records, including total hour worked, and wages earned.   Here, Defendant has failed to record as time worked, and wages earned, (1) all time that class members spend driving for company business and/or (2) all overtime hours worked.     In a case where a defendant has failed to comply with statutory recordkeeping duties, the burden of proof concerning whether compensation for all hours worked has been paid shifts from the plaintiff to the defendant.   *Mt. Clemens Pottery Co.*, 328 U.S.at 687-88.

[20]      Many Class members worked more than 10 hour shifts and, often, in excess of 12 hour shifts, *see, e.g.,* Clark, 52:2-7, and would be entitled to additional meal and rest periods (and additional penalties if they were unable to take those breaks).

16

on a regular, ongoing basis.  Defendants' corporate-wide practice results in employees' work being scheduled in such a way that it is not always possible for employees to take meal and rest breaks, or to take them in a timely manner.  As a result, meal and rest breaks are either not taken, are taken late, or employees are forced to work during what should be their breaks (and are not always paid a penalty for each occurrence) in violation of the Labor Code.

In addition, Defendants' practice is not to record all missed meal or rest breaks and, therefore, not to pay employees for all wages, or appropriate penalties, for missed breaks, in violation of Labor Code § 226.7.[21]  As such, the legal issue of whether Defendants' practices violate the law is subject to common proof, and will result in common answers, making the issue particularly suitable for class treatment.

### 4.   Claim for failure to furnish accurate wage statements

An additional classwide question is whether Defendants had/have a policy and/or practice which results in the presentation of inaccurate wage statements to Plaintiff and the Class.  Labor Code § 226(a) requires that the employer provide wage statements which include accurate information, including the amount of hours worked, the rates of pay, and gross and net wages earned.

As will be established by the common evidence, Defendants' standard policies and practices result in the wage statements of Class members failing to accurately record the actual total hours worked, and the appropriate rates of pay, as they do not include all of employees' drive time, their resultant proper overtime, the time that they are on duty during meal periods, and also do not reflect penalty wages for all missed meal periods.  Because this claim arises from Defendants' corporate-wide practices, all Class members have suffered the same injury and this claim is certifiable as well.

---

[21]   This is exactly the type of situation where the Supreme Court in *Mt. St. Clemens Pottery, supra,* held that burden must fall on the Defendants for their failure to maintain accurate records.  Here, statistical sampling will provide scientifically acceptable determinations of the total amount of penalties and wages due to the Class from these Defendants.

17

**5.      Claim for failure to pay compensation upon discharge**

As noted earlier, Defendants' business model is to terminate Class Members seasonally. These layoffs are, in fact, discharges.  *See*, *Smith vs. Superior Court (L'Oreal)* 39 Cal.4th 77, 90 (2006) ("discharge" occurs where there is no further work for the employee to perform such that services are no longer required by the employer).  Here, there is no guarantee that Class members will be re-hired for the next season, and they are not obligated to return to work for Defendants. *See, e.g.,* Wood, 178:25-179:8; Schmel, 115:3-116:7; Panzer, 142:11-14; Burke, 164:18-165:3; Villano, 132:2-10;   Capistran, 115:2-9; Burkett, 112:21-113:9;  Anderson, 63:5-13;  Patel, 90:11-20.   Thus, a common question applicable to all members of the Subclass is whether Defendants had/have a practice of not paying all final wages owed upon termination of employment.

The Subclass seeks recovery of penalties pursuant to Labor Code §203, based on Defendants' violation of Labor Code §§ 201 - 202, which obligates an employer to pay all wages due upon termination.  As discussed above, common evidence will establish that Defendants did not pay for all hours worked (including drive time and overtime), nor did they pay wages due for time spent working during meal and rest breaks.  Common evidence will further establish that that these amounts remained owed to members of the Subclass at the time of their various (and numerous) discharges.[22]

**6.      Claim for violations of B&P Code §§ 17200, *et seq.***

Whether Defendants violated the Unfair Competition Law of California, § 17200, *et seq.* is a common question, appropriate for resolution on a classwide basis, as this claim is based on the foregoing violations of the Labor Code.  More specifically, Defendants' violations of the Labor Code constitute unlawful conduct, which have

---

[22]      The calculation of the penalties due under Labor Code §203 are mathematical in nature, and easily calculated in this case, since each member of the proposed subclass will be entitled to the maximum 30-day penalty each time they were terminated, as no member of the Subclass has yet received payment of these wages and penalties.

deprived Class members of wages and other moneys due to them.  Unlawful conduct is one of the prongs upon which an action under sections 17200, *et. seq.* may be brought. Common evidence supporting this claim was discussed above regarding the specific Labor Code violations, and demonstrates that this claim, too, is amenable to class treatment.

In sum, all of the above questions can be determined on a classwide basis by reference to common evidence, including Defendants' own documentation and the testimony of Defendants' representative witnesses.  Therefore, because common questions of law and fact exist as to all class members, and because resolution of those questions will generate common answers, FRCP 23(a)(2) is satisfied.

### D. Typicality

The typicality requirement of FRCP 23(a)(3) focuses on the similarity between the lead plaintiff's legal theories and those of the people he or she purports to represent.  The typicality prerequisite is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Hanlon,* 150 F.3d at 1020.  Here, Plaintiff's legal theories are typical of, if not identical to, those of the members of the class sought to be certified.  Plaintiff seeks recovery under all theories alleged and is a member of the Class and the Subclass.  Specifically, Mr. Beal is a former employee of LNSS who was classified as non-exempt and who held the position of photographer.[23]  Declaration of Brandon Beal, "Beal Decl.," at ¶ 2-3, filed herewith.  Indeed, he has a similar interest to all other Class members in recovering unpaid reimbursements, wages, penalties, and other damages from Defendants. Further, that Plaintiff's amount of damages may differ from those of other class members does not affect a finding of typicality.  *See e.g., Lopez v. G.A.T. Airline Ground Support, Inc.*, No. 09cv2268-IEG (BGS), 2010 WL 3633177 at *7 (S.D. Cal.

---

[23]    Although Mr. Beal was not an employee of LCD, his claims are identical to the claims of current and former employees of LCD.  Indeed, both LNSS's and LCD's policies and practices are similarly violative of California law.

19

Sept. 13. 2010) (Typicality satisfied where "[e]ven though individual employees may not have suffered identical harm, each of the Plaintiffs' claims stem from the same allegedly unlawful policies and practices.") Indeed, differences in the amount of damages cannot defeat typicality. *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975); *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985). Thus, the typicality requirement is met.

### E. Adequacy of Representation

FRCP 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This factor requires "(1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes,* 603 F.3d at 614, *citing Hanlon,* 150 F.3d at 1120. Here, both Plaintiff and Class Counsel are adequate representatives for the Class.

Plaintiff does not have any conflicts of interest with other class members. As stated above, Mr. Beal asserts claims which are identical to the claims of members of the proposed Class. Indeed, Mr. Beal's claims are identical to the claims of the proposed Class and Subclass members. Declaration of Louis M. Marlin, "Marlin Decl.," ¶8, filed herewith. Plaintiff neither has, nor asserts, any claim that represents a conflict of interest with class members' claims. Marlin Decl., ¶10. In addition, Plaintiff seeks the same relief as all other class members: reimbursement for expenses, compensation for unpaid wages (drive time and overtime), and recovery for related statutory and regulatory violations. Marlin Decl., ¶9. Finally, Plaintiff understands his special role as a class representative, particularly with respect to the pursuit of the present claims and the duties which he owes to the members of the putative classes. Beal Decl. at ¶¶13-16. He has acted at all times to vigorously prosecute this action with the interests of the entire putative class in mind. Beal Decl. at ¶18. Indeed, Mr. Beal is fully prepared to continue to fulfill his duties and obligations, and to serve as representative of the Class. Beal Decl. at ¶17. *See*, *Local Joint Executive Bd. of*

20

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir.2001) ("The record indicates clearly that he understands his duties and is currently willing and able to perform them. The Rule does not require more.").

Further, Plaintiff is represented by qualified and competent counsel.  Marlin & Saltzman LLP and United Employees Law Group PC, are experienced and well-qualified to represent Plaintiff and the proposed Class.  *See,* Marlin Decl. and Declaration of Walter Haines, filed herewith.  Plaintiff's counsel has acted in the interests of the entire Class since the initiation of this litigation.  Indeed, they have vigorously prosecuted, and will continue to prosecute, the claims in this action on behalf of the Class.  Therefore, Plaintiff and his counsel are adequate representatives.

### F. The Predominance Requirement of FRCP 23(b)(3) Is Met

Under FRCP 23(b)(3), the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The Ninth Circuit has explained this requirement as follows:

> [t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation….Rule 23(b)(3) focuses on the relationship between the common and individual issues. **When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.**

*Hanlon*, 150 F.3d at 1022 (citations and internal quotation marks omitted) (emphasis added).  "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D.Cal.2006).  To determine whether the predominance requirement is satisfied, "courts must identify the issues involved in the case and determine which are subject to 'generalized proof,' and

21

1   which must be the subject of individualized proof." *Sullivan v. Kelly Services, Inc.*,

2   268 F.R.D. 356, 364 (N.D.Cal., 2010), citing *In re Dynamic Random Access Memory*

3   *(DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *6 (N.D.Cal. Jun.

4   5, 2006).  Importantly, "common issues must only predominate; they do not have to be

5   dispositive of the litigation." *Sullivan*, 268 F.R.D. at 364, citing *In re Lorazepam &*

6   *Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 29 (D.D.C.2001).

7         In this case, as discussed above, Plaintiff and Class members share common

8   factual and legal issues.  It is indisputable that these common legal and factual issues

9   form the core, and likely the entirety, of the claims being raised.  Simply put, there are

10  no substantive individual issues, as all factual and legal questions are triggered by the

11  common actions of the Defendants in violation of California law.

12        Because all Class members' claims result from the failure of Defendants to

13  comply with the law, these common liability issues predominate.  Indeed, proof of

14  liability will be established by evidence of Defendants' systemic practices, coupled

15  with this Court's classwide legal rulings, which would establish Class members'

16  entitlement to relief (or not) on a classwide basis.  For example, whether Defendants'

17  practices relating to reimbursement for expenses complies with California law would

18  be proven on a classwide basis, either affirmatively or negatively.  Further, liability

19  will be determined based upon the evidence of Defendants' practices relating to

20  payment for drive time and overtime.  In addition, proof that Defendants' standardized

21  wage statements were non-compliant is entirely common to all Class members.

22  Finally, the issues of whether the seasonal discharges required payment of all earned

23  wages, and whether there were or were not unearned wages at discharge will be

24  established by reference to the standard practices of Defendants that are applicable to

25  all Class members.

26        The only individual inquiries in this action will concern the value of each Class

27  members' damages and entitlement to penalties.  Importantly, it is of no moment to the

28  predominance analysis that there may be individual issues with respect to the

22

1   calculation of damages.  *See, In re Live Concert Antitrust Litigation*, 247 F.R.D. 98,

2   147 (C.D.Cal., 2007) ("Common issues may predominate when liability can be

3   determined on a class-wide basis, even when there are some individualized damage

4   issues.").   Indeed, "individual questions about the number of hours worked, wages

5   earned, and compensation paid . . . will not defeat certification." *Gomez v. Rossi*

6   *Concrete, Inc.*, 270 F.R.D. 579, 595 (S.D. Cal. 2010); *see Blackie v. Barrack*, 524 F.2d

7   891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question

8   and does not defeat class action treatment.").[24]  The common issues that predominate,

9   and which will be the central focus of the claims and subject to common proof, are

10  whether Defendants' policies and practices are/were ultimately unlawful.

11       Further, proof of damages owed to the class as a whole will be provable by

12  reference to Defendants' records in this case.  In addition, in connection with claims

13  where Defendants have failed to comply with statutory recordkeeping duties, so as to

14  enable a full and complete calculation of amounts owed to Class members, the burden

15  of proof on the issue shifts from Plaintiff to Defendants.  The United States Supreme

16  Court stated the rule as follows:

17       When the employer has kept proper and accurate records the
18       employee may easily discharge his burden by securing the production
         of those records. But **where the employer's records are inaccurate**
19       **or inadequate … [t]he solution, however, is not to penalize the**
         **employee by denying him any recovery** on the ground that he is
20       unable to prove the precise extent of uncompensated work. **Such a**
         **result would place a premium on an employer's failure to keep**
21       **proper records in conformity with his statutory duty**; it would
         allow the employer to keep the benefits of an employee's labors
22       without paying due compensation …. In such a situation we hold that
23       **an employee has carried out his burden if he proves that he has in**
         **fact performed work for which he was improperly compensated**
24       and if he produces sufficient evidence to show the amount and extent

---

[24]   Courts commonly certify class actions pertaining to wage and hour issues, as
26  common questions often predominate over individual questions in this context. *See,*
27  *e.g., Cicero v. DIRECTV, Inc.,* No. EDCV 07-1182, 2010 WL 2991486, at *4 (C.D.
28  Cal. July 27, 2010). "The potential recovery of each individual Plaintiff would not
    justify the litigation expense and risk of inconsistent judgments." *Id.*

of that work **as a matter of just and reasonable inference**. **The
burden then shifts to the employer to come forward with evidence
of the precise amount of work performed or with evidence to
negative the reasonableness of the inference to be drawn from the
employee's evidence**. If the employer fails to produce such evidence,
the court may then award damages to the employee, **even though the
result be only approximate**.

*Mt. Clemens Pottery Co.*, 328 U.S. at 687-688 (emphasis added).[25] Here, the records
and documentation that exists will be used to extrapolate damages for the entire Class
for all claims.  Once classwide damages have been established, a claim methodology
will be proposed by Class counsel for approval by the Court.  Defendants will have no
interest in the same, since their overall classwide liability will be settled, and
distribution of the judgment amount in a fair manner is the province of this Court.

Finally, a class action is superior to other methods to fairly and efficiently
adjudicate this controversy.  The needless expenditure of additional time, effort and
money that would be attendant to thousands of individual lawsuits is reduced, and the
potential for differing outcomes is avoided.  There is no better evidence that the instant
case should proceed on a classwide basis than the fact that if absent Class members
were to bring their claims individually, they would each rely on the same evidence of
Defendants' practices to prove their claims.  As such, the requirements of Rule
23(b)(3) have been met.

## V.   NATURE AND METHOD OF CLASS NOTICE

"For any class certified under Rule 23(b)(3), the court must direct to Class
Members the best notice practicable under the circumstances, including individual
notice to all members who can be identified through reasonable effort."   FRCP
23(c)(2)(B).  To comport with due process, notice must be "reasonably calculated,
under all the circumstances, to apprise interested parties of the pendency of the action
and afford them an opportunity to present their objections . . . [I]f with due regard for

[25]   Such sampling procedures can and will be used in this action to establish the
amount of reimbursements owed to Class members, unpaid drive time hours worked,
the amount of overtime due, and the number of missed meal and/or rest breaks.

24

the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Notice by mail has been found to be sufficient if the notice is "reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Clesceri v. Beach City Investigations & Protective Services, Inc.*, No. CV-10-3873-JST (RZx), 2011 WL 320998 (C.D.Cal., Jan. 27, 2011), *citing Mullane, supra*.  In this case, notice will be mailed to Class members at their last known address as reflected in Defendants' records, which will be subjected to a review, and skip tracing, for accuracy.

## VI.   CONCLUSION

Plaintiff, on behalf of himself and others similarly situated, requests that the Court enter an order: (1) granting this Motion; (2) certifying the Class and Subclass; (3) appointing the Plaintiff as representative of the Class and Subclass; (4) appointing Marlin & Saltzman, LLP and United Employees Law Group PC as Class Counsel; and (5) ordering that Notice of certification be given to Class members.

DATED:  February 10, 2012

**MARLIN & SALTZMAN, LLP**
**UNITED EMPLOYEES LAW GROUP PC**

By:   /s/  Kristen Marquis Fritz
LOUIS M. MARLIN
KRISTEN MARQUIS FRITZ
Attorneys for Plaintiff BRANDON BEAL

MEMO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION          CV10-8454 JST